## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LENNIS A. GEORGE**                                            **CIVIL ACTION**

**VERSUS**                                                          **NO. 16-1968**

**WARDEN JASON KENT**                                      **SECTION: "B"(1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Lennis A. George, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. On July 21, 2010, he was convicted of attempted manslaughter under Louisiana law.[1] On August 27, 2010, he was found to be a fourth offender and was sentenced as such to a term of thirty-five years imprisonment.[2] On July 20, 2011, the Louisiana

---

[1] State Rec., Vol. 4 of 7, transcript of July 21, 2010, p. 115; State Rec., Vol. 1 of 7, minute entry dated July 21, 2010; State Rec., Vol. 1 of 7, jury verdict form.
[2] State Rec., Vol. 4 of 7, transcript of August 27, 2010; State Rec., Vol. 1 of 7, minute entry dated August 27, 2010.

Fourth Circuit Court of Appeal affirmed his conviction.[3]  The Louisiana Supreme Court then denied his related writ application on February 17, 2012.[4]

On August 6, 2012, petitioner allegedly mailed a post-conviction application to the state district court; however, that application was apparently never received by the court.  On July 3, 2013, he then filed a supplemental memorandum in support of that application.[5]  The state district court denied post-conviction relief on December 9, 2014,[6] and petitioner's related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on March 16, 2015,[7] and by the Louisiana Supreme Court on January 25, 2016.[8]

On or about March 2, 2016, petitioner filed the instant federal application.[9]  In October of 2016, the state filed a response arguing that the application was untimely.[10]  Petitioner thereafter filed a motion to amend his application to submit documentation to rebut the state's timeliness defense,[11] and the state filed an opposition to that motion.[12]  The Court granted the motion to amend and ordered the state to file a supplemental response addressing petitioner's documentation and the manner in which it impacted the state's defense.[13]  In November of 2016, the state filed a supplemental response again arguing that the application was untimely.[14]  On January 26, 2017,

---

[3] State v. George, No. 2010-KA-1736 (La. App. 4th Cir. July 20, 2011); State Rec., Vol. 6 of 7.
[4] State v. George, 82 So. 3d 282 (La. 2012); State Rec., Vol. 6 of 7.
[5] State Rec., Vol. 7 of 7.
[6] State Rec., Vol. 7 of 7, Judgment dated December 9, 2014.
[7] State v. George, No. 2015-K-0213 (La. App. 4th Cir. Mar. 16, 2015); State Rec., Vol. 7 of 7.
[8] State ex rel. George v. State, 184 So. 3d 11 (La. 2016); State Rec., Vol. 7 of 7.
[9] Rec. Doc. 3.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner left blank the section of the application form instructing him to indicate the date on which he placed his application in the prison mailing system.  Rec. Doc. 3, p. 15.  However, the application was mailed to the Court in an envelope with a postage meter date of March 2, 2016.  Id. at p. 16.
[10] Rec. Doc. 15.
[11] Rec. Doc. 16.
[12] Rec. Doc. 17.
[13] Rec. Doc. 19.
[14] Rec. Doc. 20.

the state then filed another supplemental response addressing the merits of petitioner's underlying habeas claims.[15]

### Timeliness of Petitioner's Federal Application

As noted, the state first argues that petitioner's federal application is untimely. For the following reasons, the Court finds otherwise.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[16] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, the Louisiana Supreme Court denied petitioner's direct-review writ application on February 17, 2012.[17] Accordingly, his state criminal judgment became final for AEDPA purposes, and his federal limitations period therefore commenced, on May 17, 2012, when his period expired for seeking review by the United States Supreme Court. His limitations period then expired one year later on May 17, 2013, unless that deadline was extended through tolling.

---

[15] Rec. Doc. 27.
[16] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.
[17] State v. George, 82 So. 3d 282 (La. 2012); State Rec., Vol. 6 of 7.

Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The parties disagree as to whether petitioner filed such an application on or before May 17, 2013.

The state argues that petitioner filed no state post-conviction or other collateral review application on or before that date. In support of that argument, the state notes that the first such application *received* by the state district court was petitioner's "Supplemental Memorandum in Support of Post Conviction Relief" which was mailed to that court on July 11, 2013.

However, petitioner counters that he in fact mailed a post-conviction application to the state district court in August of 2012, and he has provided the Court with an "Inmate Funds Withdrawal Request" dated August 6, 2012, which does indeed show that he mailed something to the district court on that date.[18] Faced with that documentation, the state conceded: "Respondent admittedly does not have any evidence that the Inmate Funds Withdrawal Request submitted by George … is not authentic or concerns a filing other than the purported PCR application."[19]

The question, therefore, is whether the federal limitations period was tolled by the mailing of August 6, 2012, despite the fact that it was apparently never received by the state district court. The undersigned finds that the mailing did in fact toll the limitations period for the following reasons.

---

[18] Rec. Doc. 16-1, p. 1.
[19] Rec. Doc. 20, p. 2.

In Stoot v. Cain, 570 F.3d 669 (5th Cir. 2009), the United States Fifth Circuit Court of Appeals was required to determine the effect of a writ application mailed to but never received by the Louisiana Supreme Court. In Stoot, the Fifth Circuit noted:

> [T]he situation of a *pro se* prisoner is unique. Unlike other litigants, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise. Furthermore, "because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

Id. at 671-72 (citations, quotation marks, and brackets omitted). The Fifth Circuit then concluded:

> [W]e hold that, in Louisiana courts, a *pro se* prisoner's pleading is deemed filed on the date that the prisoner submits the pleading to prison authorities to be mailed, *regardless of whether the pleading actually reaches the court*. Under such a rule, it is of course incumbent upon the petitioner to diligently pursue his petition.

Id. at 672 (emphasis added).

In the instant case, the state argues that Stoot does not aid petitioner because he failed to diligently pursue his application after mailing it to the state district court on August 6, 2012. The Court is unpersuaded.

It is true that petitioner apparently took no action with respect to that application until approximately eleven months later when he submitted his supplemental application on July 9, 2013. However, the Court rejects the state's suggestion that it was unreasonable for petitioner not to inquire about the status of his post-conviction application during that eleven-month period. State criminal courts are often overburdened, and long delays in ruling on post-conviction matters are hardly uncommon. Perhaps more than anyone, the prisoners filing such applications are surely aware of those delays. While eleven months is undoubtedly a long period for a prisoner to wait patiently for a ruling, the Fifth Circuit has held that an eleven-month wait to inquire about the

status of an application is not so unreasonable as to constitute a lack of diligence.   Hardy v. Quarterman, 577 F.3d 596, 599 (5th Cir. 2009).

Further, it must be noted that when the state district court received the pleading in July of 2013, that pleading was clearly titled "*Supplemental* Memorandum in Support of Post Conviction Relief." (emphasis added)  When the court thereafter acknowledged that filing the following month in a letter to petitioner, the court noted *only* that petitioner should submit a Uniform Application for Post-Conviction Relief, see La. Code Crim. P. art. 926(D); it made no mention of the fact that it had no prior filing from him on record.[20]  Although the court obviously had no legal obligation to mention that fact in the letter, its failure to do so could reasonably be interpreted by the *pro se* prisoner as an indication that the application he was clearly attempting to supplement had in fact been received.

The only fact which does give the undersigned pause is that, in ruling on an application for a writ of mandamus[21] filed by petitioner on June 2, 2014, the Louisiana Fourth Circuit Court of Appeal clearly notified him that the district court had no record of the post-conviction application allegedly filed on August 6, 2012.[22]  Despite that notice, there is no indication that petitioner acted on that information prior to the district court issuing its judgment denying post-conviction relief on December 9, 2014.[23]  While that inaction could be argued to reflect a lack of diligence, this Court finds it not to be determinative.  Overall, petitioner has clearly been diligent in pursuing relief.  The Louisiana Supreme Court denied relief on direct review on January 25, 2016.  Petitioner then mailed his first state post-conviction application less than eight months later.  Once that

---

[20] State Rec., Vol. 7 of 7, letter to petitioner from state district court dated August 8, 2013.
[21] State Rec., Vol. 7 of 7.
[22] State v. George, No. 2014-K-0517 (La. App. 4th Cir. June 2, 2014); State Rec., Vol. 7 of 7.
[23] State Rec., Vol. 7 of 7, Judgment dated December 9, 2014.

application was denied, he sought supervisory review in a timely manner.  After the collateral-review proceedings ended in the state courts with the Louisiana Supreme Court's denial of relief on January 25, 2016, petitioner then filed his federal application less than two months later.  Based on petitioner's reasonable alacrity in seeking both state post-conviction relief and federal habeas relief, the Court finds that petitioner's efforts were sufficiently diligent.

In summary, petitioner has submitted evidence showing that he mailed a post-conviction application to the state district court on August 6, 2012, and the state has not challenged the authenticity of that evidence.  Moreover, for the foregoing reasons, the Court finds that petitioner has acted diligently in pursuing relief.  Accordingly, the Court find that <u>Stoot</u> applies and that petitioner's federal limitations period was tolled from August 6, 2012, the date on which he mailed his initial state application, until January 25, 2016, the date on which the Louisiana Supreme Court denied relief.

When the federal limitations period then resumed running at that point, only eighty (80) days of petitioner's federal limitations period had elapsed, leaving him two hundred eighty-five (285) days remaining.  Petitioner filed his federal application less than six weeks later, long before his federal limitations period expired.  Accordingly, his federal application was timely filed, and the Court will therefore review the facts of this case and petitioner's underlying claims.

## **Facts of the Case**

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> The testimony at trial revealed that on August 25, 2007, Natasha Martin, the victim, borrowed a Ford Expedition to drive to the Franklin Avenue Baptist Church to get canned goods that were being given away.  Her three children were in the vehicle.  As the family drove along I-10, Martin noticed the defendant, Lennis

George, driving near her in traffic. Martin testified that she and the defendant had dated for seven or eight years, but the relationship had been over for several months. However, Martin admitted on cross-examination that George had slept at her home just two days before this incident.

The defendant began to follow Martin along I-10 and tried to get her to pull over, which she refused to do. Martin exited I-10 at Franklin Avenue. The defendant continued to try to get Martin to pull over, and she eventually complied. However, when George got out of his vehicle, Martin drove off. The defendant returned to his vehicle and began to follow Martin again, stopping briefly to allow his sister and nephew to get out of his truck. George continued to follow Martin. At the corner of Franklin Avenue and North Dorgenois Street, the defendant rammed the side and back of Martin's vehicle, shoving it into the traffic. Fearing that the defendant would continue to ram her vehicle, Martin got out and began to dial 911 to report the incident. The defendant exited his truck and ran towards Martin screaming, "B, you want to play with me." The defendant then stabbed Martin on the side of her face and neck with a small knife that Martin described as looking like a steak knife. Martin's 16-year-old son intervened in an attempt to stop the defendant from stabbing his mother. The young man managed to pull the defendant off of Martin, which allowed Martin to briefly get away. However, the defendant broke free and stabbed Martin in the ear and across her face. Several bystanders came to Martin's aid and pulled the defendant off of her. Again, he broke free and stabbed Martin in the hand and chest. The bystanders pulled the defendant off of Martin a second time, but he continued his pursuit of Martin and tried to attack her again. George finally stopped the attack and fled in his truck after some of the bystanders approached him with bricks and sticks.

Martin's son corroborated his mother's testimony. He stated that the defendant and his mother argued during their relationship, but they never fought with "…knives and stuff like that…."

Officer Karriem Jefferson responded to the scene, where he found Martin bleeding from the head and neck. Her shirt was covered with blood, and she was screaming and very upset. He observed several wounds on her body which he noted on the domestic violence sheet attached to the police report. He also observed debris from an automobile collision. Martin explained to Officer Jefferson what had transpired and told him that the defendant repeatedly stabbed her. Officer Jefferson also interviewed the defendant's sister at the scene. She corroborated what Martin told him. Martin was transported to the hospital by ambulance. The crime lab processed the scene, but no knife was recovered. Officer Jefferson prepared an arrest warrant for George and entered it into the system.

Approximately two years later, Officer Borgius Guient, in response to an anonymous tip, went to a home where the defendant was alleged to be hiding. The owner of the house denied that George was there. When Guient and his partner, Officer Joshua Carthon, returned a second time, the homeowner consented to a search of the house. The officers heard a noise coming from the attic, searched and

found the defendant.  Officer Carthon recovered a loaded .45 caliber handgun and holster where the defendant was hiding.[24]

### Petitioner's Allegations and Claims

In his federal application, petitioner has not provided a comprehensive and comprehensible listing of his allegations and claims.  Rather, he simply submitted a skeletal form petition and attached several rambling "memoranda" which, despite their length, provided little more than cursory statements that his rights were violated in various ways.  Although he included numerous citations to jurisprudence in his memoranda, he made no effort to explain how the cited cases applied to the facts of his particular case.  In its opposition, the state argued that petitioner's application contained a hodgepodge of claims, some of which were denied on the merits by the state courts and others which are procedurally defaulted because they were never properly presented to the state courts.

This Court will attempt to untangle petitioner's Gordian knot of claims in the following fashion.  First, the Court will make its best effort to decipher the pleadings herein and ferret out the various "facts" and "claims" asserted.  Second, the Court will summarize how the state courts resolved the claims presented to them on either direct or collateral review.  Third, the Court will determine whether the state courts' denial of those claims comported with federal law.  Lastly, the Court will determine whether petitioner's remaining claims, if any, are properly before the Court for federal habeas corpus review.

As to the first task, the Court finds that petitioner is asserting the following "facts" and "claims":

---

[24] State v. George, No. 2010-KA-1736, at pp. 2-3 (La. App. 4th Cir. July 20, 2011); State Rec., Vol. 6 of 7.

- The victim violated the trial court's sequestration order (see Rec. Doc. 3-1, p. 8; Rec. Doc. 3-2, pp. 8-10)

- The victim committed perjury (see Rec. Doc. 3-1, p. 10; Rec. Doc. 3-2, pp. 12-13)

- Petitioner has new evidence (i.e. photographs) which prove he is innocent (see Rec. Doc. 3-1, p. 10)

- The witnesses gave testimony which was untruthful and inconsistent with their prior statements (see Rec. Doc. 3-1, p. 13; Rec. Doc. 3-2, pp. 9 and 20)

- The state failed to prove petitioner's guilt beyond a reasonable doubt (see Rec. Doc. 3-1, pp. 14-15; Rec. Doc. 3-2, pp. 8 and 15-16)

- The state withheld evidence from the defense (see Rec. Doc. 3-1, p. 15; Rec. Doc. 3-2, pp. 20-21; Rec. Doc. 3-3, p. 11)

- Petitioner's trial counsel was ineffective (see Rec. Doc. 3-1, pp. 15-17; Rec. Doc. 3-2, pp. 1-7 and 10-12; Rec. Doc. 3-3, pp. 1-6 and 9)

- The trial court sentenced petitioner without observing the delays required by state law (see Rec. Doc. 3-1, pp. 17-18; Rec. Doc. 3-2, p. 18)

- Petitioner's appellate counsel was ineffective (see Rec. Doc. 3-1, pp. 19 and 24, Rec. Doc. 3-2, p. 8)

- The victim's testimony was coerced (see Rec. Doc. 3-1, p. 19)

- The state failed to meet its burden of proof in the habitual offender proceeding (see Rec. Doc. 3-1, p. 21; Rec. Doc. 3-2, pp. 18-19)

- "Other crimes" evidence was improperly admitted at trial (see Rec. Doc. 3-1, p. 21; Rec. Doc. 3-2, pp. 8 and 16)

- The trial transcripts are inconsistent (see Rec. Doc. 3-1, p. 23; Rec. Doc. 3-2, pp. 16-17)

- The trial court erred by denying the "Motion for a Special Jury" (see Rec. Doc. 3-2, pp. 8 and 20)

- Petitioner was not brought to trial within the time limits under state law (see Rec. Doc. 3-2, p. 8)

- The bill of information was "untrue" (see Rec. Doc. 3-2, pp. 8 and 14)

- The trial judge subjected petitioner to double jeopardy (see Rec. Doc. 3-2, p. 12)

- Inadmissible hearsay was admitted at trial (see Rec. Doc. 3-2, p. 14)

- The motion for mistrial should have been upheld (see Rec. Doc. 3-2, p. 18)

- Petitioner's right to equal protection was denied (see Rec. Doc. 3-2, p. 20; Rec. Doc. 3-3, p. 9)

- The trial court erred in allowing defense counsel to make a statement prejudicial to the defense (see Rec. Doc. 3-3, p. 7)

- The trial court erred in allowing the state to withdraw its motion for mistrial (see Rec. Doc. 3-3, p. 7)

- The trial court erred in failing to acknowledge petitioner's "cry for proper legal assistance" and new counsel (see Rec. Doc. 3-3, pp. 7-8)

- The trial court erred in allowing the victim to be asked a question which led to the motion for mistrial and in allowing "defendant to committe [sic] perjury" (see Rec. Doc. 3-3, p. 9)

- The trial court erred in failing to protect petitioner's constitutional rights (see Rec. Doc. 3-3, pp. 9-10)

### Claims Decided by the State Courts on Direct Review

As to the second task, the Court notes that a number of petitioner's claims were denied on the merits on direct appeal.  For example, the Court of Appeal denied petitioner's claim challenging the sufficiency of the evidence, holding:

> By this pro se assignment of error, the defendant asserts that the evidence was insufficient to support his conviction.  Specifically, he argues that the State failed to present any physical or testimonial evidence that supports a finding that defendant possessed the specific intent to kill Natasha Martin.  He contends that, at best, he was provoked to violence during a domestic argument and, despite the "unfortunate and regrettable turn of events," he never had the specific intent to kill Ms. Martin.
>
> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979); State v. Green, 588 So.2d 757 (La. App. 4 Cir. 1991).  However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.  State v. Mussall, 523 So.2d 1305 (La. 1988).  The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted.  The factfinder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.  Mussall, 523 So.2d at 1309-1310.  "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence."  State v. Smith, 600 So.2d 1319, 1324 (La. 1992).
>
> A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence.  State v. Huckabay, 2000-1082, p. 33 (La. App. 4 Cir.

2/6/02), 809 So.2d 1093, 1111; State v. Harris, 99-3147, p. 6 (La. App. 4 Cir. 5/31/00), 765 So.2d 432, 435.  The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.  State v. White, 28,095, p. 14 (La. App. 2 Cir. 5/8/96), 674 So.2d 1018, 1027.

Lennis George was charged with attempted second-degree murder; he was convicted of the responsive verdict of attempted manslaughter.  La. Code Crim. Proc. art. 814 A 4.

Attempt is defined in pertinent part:  "… Any person who, having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended;…"  La. R.S. 14:27(A).

Second-degree murder is defined in pertinent part as:  "….the killing of a human being:  (1) when the offender has a specific intent to kill or to inflict great bodily harm;…"  La. R.S. 14:30.1A(1).

Manslaughter is defined in pertinent part as:  "…A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;…"  La. R.S. 14:31.

Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886, 902 (La. 1989).

The determination of whether the requisite intent is present in a criminal case is for the trier of fact.  State v. Huizar, 414 So.2d 741, 751 (La. 1982); State v. Butler, 322 So.2d 189, 194 (La. 1975).  In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense.  Jackson v. Virginia, *supra*; State v. Huizar, *supra*.

In the instant case, the defendant followed Martin as she drove along I-10 and repeatedly tried to convince her to pull over.  There was no evidence that Martin engaged in any provocative action toward the defendant.  He had a knife in his possession.  He rammed her vehicle, forcing her to exit the vehicle where he immediately attacked and stabbed her several times.  During the attack, the defendant was pulled off of Martin by Martin's eldest son and several bystanders, only to break free and continue to pursue and stab Martin.  The defendant ceased attacking Martin and fled the scene only after the bystanders armed themselves with bricks and sticks.  Therefore, it is apparent that Lennis George armed himself with a knife, followed Martin and intended to stop her and engage in a confrontation.  Given these facts, the evidence was sufficient to convict him of attempted second-degree murder.  The defendant had sufficient time to cool off and reflect on the

consequences of his actions but continued his relentless attack even after being stopped several times. Accordingly, the responsive verdict of attempted manslaughter is fully supported by the record.

The defendant also argues that the State failed to introduce any documentary evidence or testimony that Martin sustained injuries serious enough to support his conviction. Specifically, he asserts that Officer Jefferson confirmed that a knife was never found. He further argues that not a "single" doctor or other medical expert testified in support of any injuries sustained by Martin.

Natasha Martin testified that she sustained stab wounds to her face, head, neck, back, chest and hand. Ms. Martin's son, an eyewitness, testified that his mother was stabbed by George in the face and ear. Officer Jefferson testified that when he arrived on the scene, he observed wounds in the area of Martin's shoulders, head and neck. He did not see wounds on her back, hands or arms, but explained that Martin still had on her shirt, which was soaked with blood. He also stated that when a victim is covered in blood as Martin was, it is often difficult to see all the wounds that the victim sustained. Officer Jefferson noted the location of Martin's wounds on the domestic violence sheet attached to his police report. Additionally, during her testimony, Ms. Martin showed the jury the scars she sustained as a result of the attack. Accordingly, the record supports the jury's finding that Martin sustained serious enough injuries to support the defendant's conviction of attempted manslaughter.

This assignment of error is without merit.[25]

As to petitioner's claim regarding the introduction of "other crimes" evidence, the Court

of Appeal held:

The defendant filed a second and untimely *pro se* supplemental brief in which he raises as error the trial court's denial of his due process right to a fair trial because the State was allowed to introduce evidence of other crimes at trial. Specifically, witnesses for the State testified that a handgun was found when George was arrested. The handgun, a casing and a magazine was admitted into evidence. The defendant was not charged with any crime relating to a handgun.

Jurisprudence provides that if the State makes no effort to link the disputed evidence with the crime, the admission of the evidence is harmless error. State v. Manieri, 378 So.2d 931, 933 (La. 1979); State v. Richardson, 96-2598, pp. 5-6 (La.App. 4 Cir. 12/17/97), 703 So.2d 1371, 1373-74; State v. Villavicencio, 528 So.2d 215, 217 (La.App. 4 Cir. 1988).

In this case, there was no testimony that the defendant used a gun to commit the charged offense. The gun was not linked to the crime in any way. Accordingly, the admission of the gun into evidence was harmless error.[26]

---

[25] State v. George, No. 2010-KA-1736, at pp. 7-10 (La. App. 4th Cir. July 20, 2011); State Rec., Vol. 6 of 7.
[26] Id. at p. 16 (La. App. 4th Cir. July 20, 2011); State Rec., Vol. 6 of 7.

As to petitioner's claim regarding the motion for mistrial, the Court of Appeal held:

By this assignment of error, the defendant asserts that his due process right to a fair trial was violated when this Court reversed the trial court's judgment granting a defense motion for a mistrial after Ms. Martin testified during the first day of trial that she broke up with defendant because of "the abuse." The defendant argues that this reference to prior "crimes" or "bad acts" by the victim severely prejudiced the jury and contributed to the verdict. The State counters that Martin's unexpected reference to abuse was unspecified and did not warrant a mistrial because it did not unambiguously refer to another crime by George.

The following trial testimony of Natasha Martin is at issue:

Q. And were you all dating at the time of this incident, or still together, August 25, 2007?

A. No. We had broken up.

Q. And about how long before, had you all broken up?

A. I'll say, about two or three months before that.

Q. And tell the jury why you all broke up.

A. Because I just didn't want to be with him anymore.

Q. And was there an [sic] particular reason you didn't want to be with him anymore?

A. Because of the abuse.

Out of the presence of the jury defense counsel moved for a mistrial. In response, the prosecutor stated that on the Friday before the trial, Martin told him that she broke up with the defendant because she started to date someone else. That was the answer the prosecutor anticipated from Martin. The trial court granted the motion for a mistrial. The State filed a writ in this Court, which was granted. This Court reversed the trial court, reasoning:

Although the witness stated that she split up with the defendant because of abuse, it is unclear whether the abuse was physical or psychological. We do not find that the proverbial "bell" cannot be "un-rung" in this case. Further, the matter can be corrected on appeal in the event of the defendant's conviction.

The trial resumed, and Martin's testimony continued as follows:

15

Q. I'm going to pick up from yesterday.  I'm going to ask you, at some point towards the end of the time that you were dating Lennis George, did you meet somebody else?

A. Yes.

Q. And is that the reason you and Lennis George broke up?

A. Yes.

Generally, when an appellate court reviews and considers arguments made in supervisory writ applications or responses to such applications, as in the instant case, the court's disposition on the issue considered becomes the "law of the case" foreclosing relitigation of that issue either in the trial court on remand or in the appellate court on a later appeal.  Diamond B Const. Co., Inc. v. Dep't of Transp. & Dev., 2002-0573, p. 6 (La. App. 1 Cir. 2/14/03), 845 So.2d 429, 434, citing Easton v. Chevron Industries, Inc., 602 So.2d 1032, 1038 (La.App. 4 Cir. 1992).  However, the application of the "law of the case" principle to decisions made on applications for supervisory writs is discretionary, and it has been held that where a prior decision is clearly erroneous and will create a grave injustice, it should be reconsidered.  Turner v. Pelican, 94-1926, pp. 13-14 (La. App. 4 Cir. 9/15/95), 661 So. 2d 1065, 1072, abrogated in part on other grounds by, Hoskin v. Plaquemines Parish Government, 97-0061 (La. App. 4 Cir. 12/1/97), 703 So. 2d 207.

In granting the State's writ application, this Court left open the defendant's right on appeal to assert the merits of his claim that the trial court did not abuse its discretion in granting the motion for a mistrial.  Accordingly, the "law of the case" doctrine cannot be a bar to consideration of this assignment of error.

La. C.E. art. 404(B)(1) states:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The Louisiana Supreme Court set forth the applicable law in State v. Rose, 2006-0402, pp. 12-13 (La. 2/22/07), 949 So. 2d 1236, 1243-1244, as follows:

It is well settled that courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character.  La. C.E. art. 404(B)(1); State v. Williams, 96-1023, p. 30 (La. 1/21/98), 708 So.2d 703, 725; State v. Prieur, 277 So.2d 126, 128 (La. 1973).  Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the "substantial risk of grave prejudice to the defendant."  Prieur, 277 So.2d at 128.  However, the State may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  La. C.E. art. 404(B)(1).  The State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence.  Prieur, 277 So.2d at 130.  Even when the other crimes evidence is offered for a purpose allowed under art. 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. State v. Martin, 377 So.2d 259, 263 (La. 1979); Prieur, 277 So.2d at 130.  The State also bears the burden of proving that defendant committed the other crimes, wrongs or acts.  State v. Galliano, 2002-2849, p. 2, (La. 1/10/03), 839 So.2d 932, 933 (per curiam).

Although a defendant's prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted.  La. C.E. art. 403.  Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree.  State v. Germain, 433 So.2d 110, 118 (La. 1983).  As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.  Id. See also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").  (Footnote omitted).

In addition to the notice requirement imposed on the State by La. C.E. art. 404(B)(1), La. Code Crim. Proc. art. 720 states that, upon motion of the defendant, the court shall order the district attorney to provide the defendant notice of the State's intent to offer evidence of the commission of any other crime admissible under the authority of La. C.E. art. 404.

The prosecutor did not deny that notice was not given to George that the victim, Ms. Martin, would testify that abuse was the reason for their breakup. Indeed, the prosecutor stated that the witness never told him that abuse was the reason she left the defendant. Instead, she told the prosecutor, prior to trial, that she left defendant because she began to date someone else; this is the answer that the prosecutor expected.

La. Code Crim. Proc. art. 775 states that upon motion by a defendant a mistrial "shall be ordered" when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La. Code Crim. Proc. art. 770 (mandatory mistrial upon motion of the defendant when prejudicial comment made within hearing of the jury by the judge, district attorney, or a court official referring to, *inter alia*, another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible), or La. Code Crim. Proc. art. 771 (the trial court may grant a mistrial upon motion of the defendant if the court is satisfied that an admonition is not sufficient to assure the defendant of a fair trial when a remark or comment made within the hearing of the jury during trial or in argument is of such a nature that it might create prejudice against the defendant in the mind of jury).

Mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice to the defendant. State v. Leonard, 2005-1382, p. 11 (La. 6/16/06), 932 So.2d 660, 667. The mere possibility of prejudice is insufficient to warrant a mistrial. Id. "The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion." State v. Wessinger, 98-1234, p. 24 (La. 5/28/99), 736 So.2d 162, 183.

Moreover, the erroneous admission of other crimes evidence due to the State's failure to give the defense proper notice, or for any other reason, is subject to the harmless error rule. State v. Johnson, 94-1379, p. 17 (La. 11/27/95), 664 So.2d 94, 102; State v. Plaisance, 2000-1858, p. 27 (La. App. 4 Cir. 3/6/02), 811 So.2d 1172, 1192. See also State v. Shaw, 2007-1427, p. 25 (La. App. 4 Cir. 6/18/08), 987 So.2d 398, 412, writ denied, State ex rel. Shaw v. State, 2008-1957 (La. 5/15/09), 8 So. 3d 574 ("The erroneous admission of other crimes evidence is subject to the harmless error analysis."). An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. Robertson, 2006-1537, p. 9 (La. 1/16/08), 988 So.2d 166, 172.

In the instant case, there is more than sufficient evidence and testimony, apart from Martin's statement that she left because of abuse, to support a finding of a guilty verdict. Martin's account of the day of the incident was detailed. Martin's son, Derrick, testified that his mother and the defendant often had fights, but none of the fights resulted in violence with "knives and stuff like that." Furthermore, when the trial resumed, Martin admitted that she left the defendant because she began to date someone else. Nevertheless, even assuming *arguendo* that Martin's

testimony of abuse was inadmissible, viewing all of the evidence, it can be said beyond a reasonable doubt that the guilty verdict rendered in the instant case was unattributable to the challenged testimony itself or any error relative to the testimony.

There is no merit to this assignment of error.[27]

Regarding the trial court's failure to observe the sentencing delay provided in state law, the Fourth Circuit Court of Appeal held:

The first error involves the failure of the trial court to observe the twenty-four hour delay required by La. Code Crim. Proc. art. 873 before sentencing the defendant. George was sentenced on August 27, 2010, the same date that his motion for a new trial and motion for post-verdict judgment of acquittal were denied, without a waiver of the delay required by La. Code Crim. Proc. art. 873. However, in State v. Collins, 584 So.2d 356, 360 (La. App. 4 Cir. 1991), this Court held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, because the defendant in this case raises no error relative to his sentence, the failure of the trial court to observe the delay is harmless error.[28]

The Louisiana Supreme Court then denied petitioner's direct-review writ application without assigning additional reasons.[29]

## Claims Decided by the State Courts on Collateral Review

In addition to his efforts on direct review, petitioner also sought collateral review on numerous claims in the state courts. In denying petitioner's application for post-conviction relief, the state district court held:

On July 19, 2013, Mr. George filed this application for Post Conviction Relief. Within this application, Mr. George asserts the following 17 grounds for relief:

1. Sequestration Motion
2. Ineffective Assistance of Counsel
3. Double Jeopardy
4. Perjury

---

[27] George, No. 2010-KA-1736, at pp. 10-16; State Rec., Vol. 6 of 7.

[28] Id. at p. 4; State Rec., Vol. 6 of 7.

[29] State v. George, 82 So. 3d 282 (La. 2012); State Rec., Vol. 6 of 7.

     5.  Bill of Information
     6.  Inadmissible Evidence
     7.  Intention to Kill
     8.  Other Crimes Evidence
     9.  False Transcripts
    10.  Mistrial
    11.  24-Hour Delay
    12.  Illegal Multiple Bill of Information
    13.  Motion to Suppress
    14.  Fabricating
    15.  Equal Protection Clause
    16.  Without Holding [sic] Evidence
    17.  Ineffective Assistance of Counsel.[FN 3]

[FN3]  We note that Claims #2 and #17 are the same, but they are listed as presented by Mr. George.[30]

The district court then denied all of those claims for the following reasons.

As to Claims 1, 3, 4, 5, 6, 9, 12, 13, 14, 15, and 16, the court found that petitioner failed to meet his burden of proof, holding:

First, Mr. George presents the following 11 claims for which he has failed to meet the required burden of proof:  (1) his right to a fair trial was violated when a witness violated the sequestration order; (2) his resentencing under the Multiple Bill Statute constituted double jeopardy; (3) the victim committed perjury; (4) the Bill of Information was invalid and unconstitutional; (5) no admissible, substantial, or sufficient evidence was produced at trial; (6) his right to a fair trial was violated when the court reporter allegedly created a false transcript of the trial, which resulted in an inadequate record for appeal purposes; (7) the Multiple Offender Bill or Information was illegal; (8) the trial court erred in denying a "Motion for Special Jury Instructions;" (9) the State and victim fabricated the case; (10) his Equal protection rights under the Fourteenth Amendment were violated as he did not receive a fair trial; and (11) the trial court and the prosecutor withheld evidence.[FN 4]

[FN 4]  George Mot. at 5-7, 9-10.

Louisiana Code of Criminal Procedure Art. 930(2), "Burden of proof," states:

---

[30] State Rec., Vol. 7 of 7, Judgment dated December 9, 2014, at pp. 1-2.

> The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted.

Mr. George merely lists each of these claims followed by cites to case law. Mr. George does not present any factual basis, exhibits, or arguments in support of these claims.  As it is Mr. George's burden of proof to establish that relief should be granted, the Court denies these claims based on the failure to establish a claim for which relief could be granted.[31]

Pursuant to La. Code of Crim. P. art. 930.4(A), the state district court then denied claims 7, 8, 10, and 11 as repetitive in that those claims had already been considered on direct appeal.[32]

Lastly, as to Claims 2 and 17, the court denied relief on the merits, holding:

> Finally, Mr. George argues that he was denied his constitutional right to effective counsel.  Mr. George asserts that trial counsel proved ineffective by:  (1) allowing the judge to continue the trial without sufficient, supporting, or admissible evidence against him;  (2) failing to challenge the sufficiency of the evidence presented; (3) failing to investigate his case; and (4) failing to appeal the Fourth Circuit's overruling the trial court's granting of a mistrial.[FN 10]
>
> [FN 10]  George Mot. at 5, 11.
>
> The test for effectiveness of counsel is two-pronged:  (1) the defendant must show that counsel made errors so serious that he was not functioning as guaranteed by the Sixth Amendment;  and (2) the defendant must show that the deficient performance prejudiced the defense by proving that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[FN 11] The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[FN 12]  The assessment of an attorney's performance requires that his conduct to be evaluated from counsel's perspective at the time of the occurrence.[FN 13]  A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming that counsel has exercised reasonable professional judgment.
>
> [FN 11]  Strickland v. Washington, 466 U.S. 668 (1984); State ex rel. Busby v. Butler, 538 So.2d 164 (La. 1988).

---

[31] State Rec., Vol. 7 of 7, Judgment dated December 9, 2014, at pp. 2-3.

[32] Id. at pp. 3-5.

[FN 12]  State v. Porche, 780 So.2d 1152, 2000-1391 (La. App. 4 Cir. 2/14/01) (quoting Strickland, 466 U.S. at 693).

[FN 13]  Mattheson v. King, 751 F.2d 1432 (5th Cir. 1984).

In this instance, Mr. George has not met his burden of proving that but for counsel's alleged unprofessional errors, there was a reasonable probability that the proceedings would have been different.  Again, Mr. George merely states his claims and cites to case law; however, he does not provide any information in support of his claims.  Therefore, as Mr. George has failed to meet his burden of proof to support his claims of ineffective assistance of counsel, the Court denies theses [sic] claims. [33]

The Louisiana Fourth Circuit Court of Appeal then likewise denied relief, stating:

We have reviewed the writ application filed by relator and the supplement to the application filed with this Court on March 10, 2015.  This Court finds no error in the trial court's denial of relator's application for post-conviction relief on December 9, 2014.  The writ is denied. [34]

The Louisiana Supreme Court thereafter denied petitioner's related writ application, holding:

Denied.  Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Relator's claims concerning the sufficiency of the evidence, the admission of other crimes evidence and the failure to comply with La.C.Cr.P. art. 873 are repetitive.  La.C.Cr.P. art. 930.4.  As to the remaining claims, relator fails to satisfy his post-conviction burden of proof.  La.C.Cr.P. art. 930.2. [35]

## **The Standards Under Which This Court Must Assess the Foregoing State Court Decisions**

All of the foregoing claims were denied by the state courts on the merits. [36]  This Court's review of those claims is therefore limited by the deferential standards of review mandated by the AEDPA, as follows.

---

[33] Id. at pp. 5-6.
[34] State v. George, No. 2015-K-0213 (La. App. 4th Cir. Mar. 16, 2015); State Rec., Vol. 7 of 7.
[35] State ex rel. George v. State, 184 So. 3d 11 (La. 2016); State Rec., Vol. 7 of 7.
[36] The undersigned notes that four of petitioner's post-conviction claims ("Intention to Kill," "Other Crimes Evidence," "Mistrial," and "24-Hour Delay") were denied pursuant to La. Code of Crim. P. art. 930.4(A) because they

As to claims presenting pure questions of fact, a state court's factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to claims presenting pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell v. Cone, 535 U.S. 685, 694 (2002).

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

---

had already been asserted and adjudicated on direct appeal. However, that procedural ruling is of no moment in this federal proceeding. Because the claims had been previously denied on the merits on direct review, this Court simply "looks through" that subsequent procedural ruling and evaluates the validity of the prior direct-review ruling. See Ylst v. Nunnemaker, 501 U.S. 797, 804 n.3 (1991).

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While these AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

Mindful of those deferential standards of review, the Court finds that, for the following reasons, petitioner is not entitled to relief based on any of the claims rejected on the merits by the state courts.

## Sufficiency of the Evidence Claim

As noted, petitioner's claim challenging the sufficiency of the evidence was denied on the merits by the state courts on direct appeal. Because such a claim presents a mixed question of law and fact, this Court must therefore defer to the state court's decision rejecting that claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). He has not done so.

As the Louisiana Fourth Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 561 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying

the already deferential <u>Jackson</u> standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." <u>Parker v. Matthews</u>, 567 U.S. 39, 43 (2012); <u>see also</u> <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012).

In the instant case, petitioner was convicted of attempted manslaughter. As the Louisiana Fourth Circuit Court of Appeal correctly noted, the elements of that offense were clearly established by the testimony of the victim and other witnesses. Although petitioner claims that those witnesses lied, the jury obviously found their testimony credible. Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("[U]nder <u>Jackson</u>, the assessment of the credibility of witnesses is generally beyond the scope of review."); <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); <u>McCowin v. Scott</u>, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); <u>Phillips v. Cain</u>, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), <u>adopted</u>, 2012 WL 2565025 (E.D. La. July 2, 2012); <u>Picou v. Cain</u>, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

To the extent that petitioner is contending that the state failed to prove that he acted with the specific intent to kill, that contention obviously lacks merit. It is true that, under Louisiana law, "[t]o support a conviction for attempted manslaughter, the state must prove the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal." <u>State v. Leone</u>, 140 So. 3d 793, 801 (La. App. 2nd Cir. 2014). However:

> Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to

> follow his act or failure to act." LSA-R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Buchanon, 95-0625 (La.App. 1 Cir. 5/10/96), 673 So.2d 663, 665, writ denied, 96-1411 (La. 12/6/96), 684 So.2d 923. ... *Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife* or a gun. See State v. Brunet, 95-0340 (La.App. 1 Cir. 4/30/96), 674 So.2d 344, 349, writ denied, 96-1406 (La. 11/1/96), 681 So.2d 1258.

State v. Green, 211 So. 3d 683, 688 (La. App. 1st Cir. 2017) (emphasis added). Here, the evidence showed that petitioner followed the victim in order to confront her and then repeatedly stabbed her with a knife during the ensuing confrontation. That evidence was more than sufficient for the jury to find that petitioner acted with the specific intent to kill the victim.

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

### **"Other Crimes" Evidence Claim**

Petitioner's claim concerning the admission of "other crimes" evidence, another claim which denied on the merits by the state courts on direct appeal, likewise fails in this federal proceeding.

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson,

162 F.3d 855, 862 (5th Cir. 1998).  Therefore, to the extent that petitioner is arguing that the state

courts misapplied state evidence law, his claim simply is not reviewable in this federal proceeding.

Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

To the extent that petitioner is asserting a federal claim, he fares no better.  The United

States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless
> those errors result in a "denial of fundamental fairness" under the Due Process
> Clause.  The erroneous admission of prejudicial evidence will justify habeas relief
> only if the admission was a crucial, highly significant factor in the defendant's
> conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862

("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly

significant role in the trial will habeas relief be warranted.").

Here, the Louisiana Fourth Circuit Court of Appeal found that the "other crimes" evidence

in question (i.e. the fact that petitioner possessed a gun at the time of his arrest) was erroneously

admitted at trial.  Nevertheless, there is no reasonable basis for this Court to conclude that the fact

that petitioner was found with a gun played any role whatsoever in his conviction of the attempted

murder of the victim in this case.  In committing the instant crime, petitioner used a knife, not a

gun.  Moreover, there was overwhelming evidence, including the compelling testimony of the

victim and her son, that petitioner savagely and repeatedly stabbed the victim in this incident.

Petitioner was obviously convicted based on that evidence, *not* the irrelevant fact that he possessed

a gun when he was apprehended years later.

For all of these reasons, petitioner has failed to demonstrate that the state court's decision

was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject his claim.

## Mistrial Claim

Petitioner's claim concerning the denial of a mistrial likewise does not warrant relief.  As noted, the trial court granted a mistrial after the victim referenced prior abuse.  However, the state immediately pursued an emergency writ, the Louisiana Fourth Circuit Court of Appeal overturned the trial court's decision, and the trial resumed.  After conviction, petitioner then argued on direct appeal that the mistrial should have been upheld, but that claim was rejected by the Court of Appeal and the Louisiana Supreme Court.

Again, to the extent that petitioner is arguing that the state courts erred in applying the state laws concerning the grant or denial of a mistrial, such a claim is not cognizable in a federal habeas corpus proceeding.  "'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  Further, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding.  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Thomas v. Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) ("[E]rrors of state law, such as a denial of a mistrial, must rise to a constitutional dimension in order to merit habeas relief."); Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) ("Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal

habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.").

Moreover, it is clear here that petitioner's federal constitutional right to a fair trial was not violated by the victim's comment regarding "abuse." As previously noted, a petitioner cannot be granted federal habeas relief on the ground that his trial was rendered fundamentally unfair by an evidentiary error unless the evidence at issue played a crucial, critical, and highly significant role in the trial. Lucas v. Johnson, 132 F.3d 1069, 1079 (5th Cir. 1998). Relief simply is not warranted where, as here, (1) the evidence at issue was a nonresponsive, unanticipated, and fleeting remark made by a testifying witness, (2) the remark was not highlighted by further questioning or in argument, and (3) there is no reason to believe that the remark had any impact on the conviction in light of the overwhelming evidence of guilt. See, e.g., United States v. Jackson, No. 98-31091, 1999 WL 706084, at *4 (5th Cir. Aug. 17, 1999); Weatherspoon v. Cain, Civ. Action No. 10-4500, 2011 WL 4351397, at *13 (E.D. La. July 8, 2011), adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); Talley v. Cain, Civ. Action No. 08-3542, 2009 WL 916331, at *15 (E.D. La. Apr. 6, 2009). Furthermore, the witness subsequently changed her answer to the question of why they broke up from "abuse" to the fact that she had met someone else. Accordingly, the trial court's denial of the motion for mistrial did not violate federal constitutional law.

### Immediate Sentencing Claim

Petitioner also challenges the failure of the state courts to grant him relief based on the fact that the trial court sentenced him without affording him the delay mandated by La. Code Crim. Proc. art. 873. However, as previously noted herein, federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of

state law will not suffice.  28 U.S.C. § 2254; <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1983).  Therefore, this claim, which is based purely on state law, simply is not cognizable on federal habeas review. <u>See, e.g.</u>, <u>Harris v. Warden, Louisiana State Penitentiary</u>, Civ. Action No. 12-cv-1731, 2015 WL 5231266, at *4 (W.D. La. Aug. 11, 2015), <u>adopted</u>, 2015 WL 5244413 (W.D. La. Sept. 8, 2015); <u>Farinas v. La. Dpt. of Corrections</u>, Civ. Action No. 14-1272, 2015 WL 430121, at *9-10 (E.D. La. Feb. 2, 2015) ("[A] state's failure to follow its own sentencing procedures is not reviewable by a federal habeas corpus court.").

### Ineffective Assistance of Counsel Claims

Petitioner next claims that he received ineffective assistance of counsel.  As the state courts correctly noted in denying those claims in the post-conviction proceedings, such claims must be evaluated under the standards set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Under <u>Strickland</u>, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Id</u>. at 697.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.

See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate

court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Because the state courts denied petitioner's ineffective assistance of counsel claims on the merits, and because such claims present a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

>    The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>    A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Petitioner's ineffective assistance of counsel claims are rambling and vague, generally consisting of little more than conclusory allegations without factual support and jurisprudential citations without any indication of the relevance of the citations or their applicability to petitioner's

case.  That is wholly inadequate, in that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."  <u>Miller v. Johnson</u>, 200 F.3d 274, 282 (5th Cir. 2000).

Moreover, in those few instances in which petitioner does provide at least some context for his conclusory allegations, he still falls for short of meeting his burden of proof to establish that he is entitled to relief.

For example, petitioner contends that his trial counsel "was ineffective when allowing the court judge to continue to proceed without the supporting of admissible evidence."[37]  Not only is that allegation unsupported, it is absurd – as previously explained herein, there was ample evidence of petitioner's guilt.

Further, although petitioner repeatedly alleges that trial counsel failed to perform an adequate pretrial investigation, it is clear that such allegations alone are insufficient to warrant relief.  Rather, to prevail on a claim concerning inadequate investigation, a petitioner must be able to point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense.  <u>See</u> <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998); <u>see also</u> <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Wilson v. Cain</u>, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), <u>aff'd</u>, 641 F.3d 96 (5th Cir. 2011); <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, petitioner has not shown that any such beneficial information would have been revealed by further investigation; on the contrary, his assertions are entirely speculative.  It

---

[37] Rec. Doc. 3-2, p. 10.

is beyond cavil that such bare speculation does not suffice to meet his burden of proof.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

Petitioner's claims that he received ineffective assistance in matters concerning supervisory or appellate review are similarly unpersuasive.  For example, he faults his counsel for not seeking review by the Louisiana Supreme Court after the Court of Appeal granted the state's emergency writ during trial and reversed the trial court's grant of a mistrial.  However, although counsel obviously could have sought such review, see La. Code Crim. P. 775.1, petitioner has not shown that he was actually *prejudiced* by counsel's failure to do so.  Further, the record indicates he could not make that showing, in light of the fact that the Louisiana Supreme Court later rejected that same claim on direct appeal.  Accordingly, there is simply no reason to believe that the court would have reached a contrary conclusion if it had been presented the same issue in a writ application challenging the Court of Appeal's granting of the emergency writ during trial.  See Bolton v. Cain, Civ. Action No. 13-4572, 2014 WL 432943, at *20 (E.D. La. Feb. 4, 2014).

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He clearly has not made that showing in the instant case.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## Remaining Claims Denied by the State Courts

In the post-conviction proceedings, petitioner also asserted a veritable laundry list of other claims including:  he was denied a fair trial by the violation of the sequestration order; the enhanced

habitual offender sentencing violated double jeopardy; the victim committed perjury; the bill of information and the multiple bill of information were invalid and illegal; the trial transcripts were false; the trial court erred in denying a "Motion for Special Jury Instructions"; the state's case was fabricated; he was denied equal protection under the law; and evidence was withheld from the defense. The state courts denied relief, simply noting that all of the claims were conclusory and factually unsupported.

The denial of relief by the state courts on that basis was not unreasonable, in that petitioner's claims consisted of little more than legal jargon, references to broad statutory or constitutional principles, and unexplained case citations. He failed to provide any coherent, specific discussions concerning how the referenced principles or cited authorities were violated in his *particular* case, much less adequate supporting evidence and corroborating references to the record.

Petitioner has repeated his imprecise, scattershot approach in the instant federal application, and this Court, like the state courts before it, can do little more than simply observe that petitioner has merely alleged – *but not met his burden to actually show* – that his rights were violated in any of these various respects. That alone is obviously fatal to his claims because, in federal habeas proceedings, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

For example, although petitioner contends that the victim committed perjury and that the state fabricated evidence, he has presented no evidence whatsoever proving such perjury and fabrication. Although he points to instances in which the victim's testimony was internally

inconsistent or contradicted by the testimony of other witnesses,[38] such inconsistencies and contradictions merely present questions of credibility for the jury; they are not sufficient to establish perjury.  See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990).  Similarly, although he contends that the transcripts were falsified, he does not explain in what respects they were false or provide any corroborating evidence.  Likewise, although he claims that evidence was withheld from the defense, he failed to provide the proof necessary to corroborate his bald allegations that the evidence was in fact withheld from the defense.  See, e.g., Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *5 (E.D. La. Mar. 8, 2010) ("Where, as here, a petitioner presents no evidence whatsoever, such as an affidavit from trial counsel, in support of a contention that Brady material was in fact withheld from the defense, his claim fails at the initial prong of the Brady inquiry."), aff'd, 434 Fed. App'x 405 (5th Cir. 2011).

Moreover, the Court further notes that many of petitioner's contentions simply do not present a cognizable, nonfrivolous federal constitutional issue.  For example:

- Although petitioner complains about the alleged violation of the sequestration order, such a violation generally is not of federal constitutional dimension.  See, e.g., Logan v. Cain, Civ. Action No. 11-2381, 2013 WL 3293659, at *15 (E.D. La. June 28, 2013).

- Petitioner's contention that the enhanced habitual offender sentencing violated double jeopardy is patently frivolous.  "It is a well-recognized principle in federal habeas corpus proceedings that habitual offender statutes do not violate the double jeopardy clause of the United States Constitution."  Woodward v. Beto, 447 F.2d 103, 104-05 (5th Cir. 1971);

---

[38] See, e.g., Rec. Doc. 3-1, pp. 10 and 13.

accord Holmes v. Tanner, Civ. Action No. 10-1593, 2011 WL 5869396, at *5 (E.D. La. Nov. 22, 2011), adopted, 2011 WL 6748800 (E.D. La. Dec. 22, 2011).

- While petitioner challenges the bill of information and the multiple bill of information, the sufficiency of a state charging instrument is not a matter for federal habeas relief unless it can be shown that the instrument was so defective that it deprived the state court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam). Where, as here, the state courts have found that the charging documents were legally sufficient under state law, there is no basis for this federal court to second-guess the state courts' interpretation on that matter of state law. Id. at 68-69; Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *11 (E.D. La. Apr. 27, 2015).

In summary, petitioner presented the state courts with numerous claims, some of which were essentially nonsensical, and all of which were conclusory and unsupported by corroborative evidence and/or applicable law. In light of those realities, there is simply no basis for concluding that the denial of such claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, the AEDPA requires that this Court defer to the state courts and likewise reject the claims denied on the merits by the state courts.

## **Unexhausted/Procedurally Barred Claims**

The foregoing claims dismissed on the merits were the *only* claims petitioner presented to the state courts. Therefore, to the extent that petitioner's federal application could be interpreted as asserting any other claims, the state correctly notes that those other claims would be

unexhausted.[39]  Further, as the state also correctly notes in its response, those unexhausted claims would be procedurally barred from federal review for the following reasons.

The United States Fifth Circuit Court of Appeals has held that "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court.  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).  In the instant case, there is little doubt that any new attempt by petitioner to seek post-conviction relief would be rejected by the state courts on procedural grounds.  In fact, the Louisiana Supreme Court expressly noted as much in its denial of petitioner's collateral-review writ application, stating:

> Relator has now fully litigated his application for post-conviction relief in state court.  Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8.  Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory.  Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final.  Hereafter, unless he can

---

[39] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).  That requirement applies to all levels of review in the state court system, meaning that a petitioner's federal claim must have been fairly presented to "each appropriate state court (including a state supreme court with powers of discretionary review)."  Baldwin, 541 U.S. at 29.

Because of the rambling nature of petitioner's pleadings, determining which of his musings are intended as actual "claims" and which of those "claims" are exhausted cannot be definitely determined.  That said, the memorandum at Rec. Doc. 3-2 essentially mirrors petitioner's "Supplemental Memorandum in Support of Post Conviction Relief" filed with the state district court on July 9, 2013 -- therefore, there is at least some basis for concluding that the claims asserted therein are exhausted, in that he arguably pursued those claims through a complete round of state court review.  On the other hand, Rec. Docs. 3-1 and 3-3 do not appear to have direct counterparts in the state court record, although some of the "claims" asserted therein were asserted on direct appeal or are simply variations of the claims contained in Rec. Doc. 3-2.  However, if any of the other statements and allegations therein are construed as "claims," those "claims" would be unexhausted.

show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.[40]

As a result, petitioner's unexhausted claims are procedurally barred from federal relief unless he demonstrates either that (1) both "cause" exists for his default and "prejudice" would result from the application of a procedural bar or (2) the Court's failure to address the claims would result in a "fundamental miscarriage of justice." See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Although petitioner's supporting memoranda does in fact include a section entitled "Claim 18 Cause for Procedural Default,"[41] that section is largely nonsensical and seems devoted to various alleged errors by the trial court and counsel unrelated to any default of petitioner's claims. Here, the default stemmed from the fact that petitioner's unexhausted claims were not properly asserted on either direct or collateral review in the state courts. However, even under the most liberal reading of petitioner's application, he identifies no actions of the trial court which prevented him from asserting those claims. Moreover, although ineffective assistance of counsel can in some instances serve as cause for a procedural default, that does not appear to be the case here for the following reasons.

If a particular claim is unexhausted and therefore procedurally defaulted because it was not asserted on *direct* appeal, ineffective assistance of counsel on direct review can serve as cause for the default – *subject to an important limitation*:

---

[40] State *ex rel.* George v. State, 184 So. 3d 11, 11-12 (La. 2016); State Rec., Vol. 7 of 7.
[41] Rec. Doc. 3-3, pp. 1-11.

> Ineffective assistance of counsel on direct appeal may provide cause to avoid a procedural bar, but "the exhaustion doctrine ... generally requires that a claim for ineffective assistance of counsel be presented to the state courts as an independent claim before it can be used to establish cause for procedural default." Murray v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).  In other words, the claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures.  Edwards v. Carpenter, 529 U.S. 446, 451-53, 120 S.Ct. 1587, 1591-92, 146 L.Ed.2d 518 (2000).

Hatten v. Quarterman, 570 F.3d 595, 605 (5th Cir. 2009).  Here, petitioner has not exhausted an independent claim that his appellate counsel was ineffective for failing to assert his unexhausted claims;[42] therefore, that purported ineffective assistance on direct review cannot serve as cause for his default.

On the other hand, if a petitioner argues that a particular claim is unexhausted and therefore procedurally defaulted because counsel was ineffective for not asserting the claim on *collateral* review (or because he lacked counsel in the collateral review proceedings), that cannot serve as cause for a procedural default *except in one very limited circumstance*.  As the United States Supreme Court recently explained:

> [I]n proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default.  Thus, in Coleman [ v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)], this Court held that attorney error committed in the course of state postconviction proceedings – for which the Constitution does not guarantee the right to counsel, see Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (plurality opinion) – cannot supply cause to excuse a procedural default that occurs in those proceedings.  501 U.S., at 755, 111 S.Ct. 2546.

---

[42] While it is true that petitioner may have exhausted claims that his appellate counsel was ineffective in other respects, that is of no moment since he did not exhaust a claim that his appellate counsel was ineffective *for failing to assert his unexhausted claims*.  The fact that a petitioner has exhausted *other* ineffective assistance of counsel claims does not render exhausted ineffective assistance claims based on *different* facts and theories.  See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir. 2002); Burns v. Estelle, 695 F.2d 847, 849-50 (5th Cir. 1983); Bruce v. Deville, Civ. Action No. 15-1008, 2015 WL 6440336, at *5 n.33 (E.D. La. Oct. 21, 2015); Evans v. Rader, Civ. Action No. 13-0196, 2013 WL 2154124, at *2 n.13 (E.D. La. Apr. 23, 2013).

In Martinez [v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)], this Court announced a narrow, "equitable ... qualification" of the rule in Coleman that applies where state law requires prisoners to raise claims of ineffective assistance of trial counsel "in an initial-review collateral proceeding," rather than on direct appeal. Martinez, 566 U.S., at 16, 17, 132 S.Ct. 1309. It held that, in those situations, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if" the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding. Id., at 17, 132 S.Ct. 1309. In Trevino [v. Thaler, 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013)], the Court clarified that this exception applies both where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal and where the State's "procedural framework, by reason of its design and operation, makes it unlikely in a typical case that a defendant will have a meaningful opportunity to raise" that claim on direct appeal. 569 U.S., at ——, 133 S.Ct., at 1921.

Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017). Here, petitioner's defaulted claims do not concern ineffective assistance of counsel at trial; therefore, Martinez is inapplicable.[43]

For the foregoing reasons, petitioner cannot use either the purported ineffectiveness of appellate counsel or his lack of post-conviction counsel to serve as cause for any of his unexhausted and therefore procedurally defaulted claims. In light of that fact and because he has proffered no other cause, cause has not been established – and "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In that petitioner has not met the "cause and prejudice" test, his unexhausted claims are barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent

---

[43] As noted, petitioner's ineffective assistance of trial counsel claims were asserted and denied on the merits in the state collateral-review proceedings. Because those claims were not barred from federal review on procedural grounds, Martinez simply does not apply.

of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted).  However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995).  Here, petitioner presents no new evidence of the type or caliber referenced in Schlup.[44]  Moreover, overwhelming evidence of his guilt was introduced at trial.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's unexhausted claims are procedurally barred and should not be considered by this Court.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Lennis A. George be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[44] In his federal application, petitioner alleges that he "has in his possession pictures that clearly shows the victim has no facial injuries, no scars, or wound.  Mr. George has pictures of crime area.  Mr. George can provide these pictures to prove his innocence."  Rec. Doc. 3-1, p. 10.  Even putting aside the fact that petitioner failed to actually produce the pictures, such pictures, even if they exist, do not prove his innocence.  Multiple witnesses testified that petitioner repeatedly attacked the victim with a knife – and even petitioner does not deny that fact.  As previously explained in this opinion, the fact that petitioner attacked the victim with a deadly weapon (a knife) is sufficient to support his conviction and negate any suggestion that he is actually innocent.

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[45]

New Orleans, Louisiana, this fourteenth day of August, 2017.


JANIS VAN MEERVELD
UNITED STATES MAGISTRATE JUDGE

---

[45] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

46